UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FRED P. BALSAMO | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| V. | : | CIVIL ACTION NO. |
| | : | 3:06 CV 1325 JCH |
| CATHY FINKLE, et al., | : | |
| | : | May 3, 2007 |
| Defendants | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**RULING ON PARTIAL MOTION TO DISMISS (DOC. NO. 35)**

I.    INTRODUCTION

_____Fred P. Balsamo has filed a Complaint against Cathy Finkle, John Finkle,

Thomas S. Hennessey, and the East Haven Board of Education, alleging a claim of

intentional infliction of emotional distress under Connecticut state law and violations of

his substantive due process rights under the Fourteenth Amendment to the United

States Constitution, as enforced through sections 1983 and 1988 of Title 42 of the

United States Code.

John Finkle and Thomas Hennessey ("defendants") have moved to dismiss

Balsamo's state law claim for intentional infliction of emotional distress against

themselves and violations of his substantive due process rights.  For the following

reasons, the court denies the partial Motion to Dismiss.

1

## II. STANDARD OF REVIEW

In deciding a motion to dismiss, the court takes the allegations of the Complaint as true and construes them in a manner favorable to the plaintiff. Hoover v. Ronwin, 466 U.S. 558, 587 (1984); see Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984). The court must draw all reasonable inferences in the plaintiff's favor. See, e.g., Yung v. Lee, 432 F.3d 132, 146 (2d Cir. 2005) (discussing Rule 12(b)(6) motion to dismiss); Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003) (internal citations omitted) (discussing Rule 12(b)(1) motion to dismiss).

A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), tests only the adequacy of the complaint. United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004). A Rule 12(b)(6) motion can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Such a motion cannot be granted simply because recovery appears remote or unlikely on the face of a complaint. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. (quotation omitted). The complaint need only provide notice to the other party of the basis of the claim. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002). However, "bald assertions and conclusions of law will not suffice" to meet this pleading standard. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

## III.    FACTS

Balsamo is employed by the East Haven Public School District as the Director of Athletics.  He alleges that he suffered intentional infliction of emotional distress based on the conduct of Mrs. Finkle, Mr. Finkle, Mr. Hennessey and the East Haven Board of Education beginning around March of 2004 until his suspension in March of 2006.  He also alleges procedural and substantive due process violations resulting from the aforementioned suspension.  Finkle is the President of the East Haven Board of Education.  Hennessey is a member of the East Haven Board of Directors.

The basis of the intentional infliction of emotion distress claim against Finkle springs from his alleged conduct that began in October of 2004.  At this time, Finkle, in his capacity as President of the Board of Education, called Balsamo.  Finkle did not agree with the coaching techniques of the school's volleyball coach, claiming he was not giving adequate playing time to a particular individual.  When Balsamo defended the coach, Finkle "flew into a rage and denounced the plaintiff."  Compl. ¶ 10, Third Count.  In June of the following year, Finkle and the East Haven Board of Education denied this volleyball coach reappointment.  Finkle made a public statement claiming that the reason for this denial were issues that "the athletic director [did not] work very hard toward" resolving.  Compl. ¶ 13, Third Count.

In April of 2005, Finkle's son, a student athlete at the East Haven School District, took a trip to Florida.  To go on the trip, the boy turned into the school a false medical note claiming that he was sick.  The boy's coach called the Finkle residence and was informed by Finkle's other child that the son was in Florida.  As a result of this, Finkle telephoned Balsamo and, using profanity, demanded that disciplinary actions be taken

3

against the coach.

Late in April, Balsamo received a complaint from a physically disabled student that he had been picked on by other students, including one of Finkle's children. After investigating the issue, Balsamo wrote a report documenting the complaint. Finkle replied to the report by writing a letter to Balsamo stating, among other things, that Finkle was "in awe of your arrogance." Id. ¶ 12, Third Count.

In October 2005, an allegation of sexual harassment was made against Balsamo. The East Haven Board of Education hired an attorney, who prepared a 23-page detailed report and concluded that the allegations were false. After receiving that report, Finkle ordered another investigation of Balsamo. Balsamo alleges that Finkle knew these were all false. As a result of this second investigation, Balsamo was suspended without pay for 10 days.

The bases of the claim for intentional infliction of emotional distress against Hennessy relates back to a time before he was a member of the Board of Education. Hennessey' son, a captain of one of the East Haven athletic teams, was involved in a verbal altercation with another captain, which altercation led to Hennessey's son claiming he was assaulted by the other captain. Balsamo investigated the matter and determined there was no assault. He then counseled both boys to behave "in a sportsmanlike manner toward each other." Id. ¶ 4, Fourth Count. Hennessey's son refused and behaved in a rude and disrespectful toward Balsamo. Hennessey then called Balsamo and "berated" him. Compl. ¶ 4, Fourth Count.

Shortly thereafter, Hennessey became a member of the Board of Education, stating that his goal was "to get Fred." Id. Thereafter, Hennessey and Finkle met with

4

Balsamo and stated that, "If you can't make me happy, I'm going to do something about it." Id. at ¶ 5, Fourth Count. Hennessey was also involved in the process of pushing for the second investigation of Balsamo after he was cleared of the sexual harassment charges. Balsamo's suspension was the result of these actions.

As a result of the above mentioned actions by defendants Finkle and Hennessey, Balsamo claims his substantive due process rights were violated. He claims that the pursuit of an investigation resulting in suspension, after he was found not guilty of sexually harassing a colleague, was outrageous and conscience shocking.

## IV.    DISCUSSION

### A.  Intentional Infliction of Emotional Distress

In order to sustain a claim for intentional infliction of emotional distress under Connecticut law, a plaintiff must prove: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Bd. of Educ. of the Town of Stonington, 254 Conn. 205, 210 (2000) (citations omitted). Whether the defendant's conduct was extreme and outrageous is initially a question for the court to address. See id. "Only where reasonable minds disagree does it become an issue for the jury." Id.

To be extreme and outrageous, the defendant's conduct must exceed "all bounds usually tolerated by decent society . . . ." See id. (quotation omitted). In fact:

> [l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Id. (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d, 73 (1965)).

Connecticut courts have held that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions, or conduct that displays bad manners or results in hurt feelings, do not support a claim for intentional infliction of emotional distress." Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000) (citations omitted); see also Perodeau v. City of Hartford, 259 Conn. 729, 757 (2002) (stating that individuals in the workplace should expect to be subject to workplace gossip, rivalry, personality conflicts, and the like). Individuals in the workplace, in particular, should expect to experience some level of emotional distress. Perodeau, 259 Conn. 729.

Finkle and Hennessey have moved for dismissal of the state law claim of intentional infliction of emotional distress, asserting their acts did not rise to the level of extreme and outrageous conduct. However, at this stage of the case, the court cannot find that there are no set of facts provable under the alleged time of the complaint in support of Balsamo's claim which would entitle him to relief. See Conley, 355 U.S. at 45-46. Thus, the motion to dismiss is denied. According to the Complaint, the actions of these defendants went beyond mere insults and criticism of Balsamo's job performance. Finkle and Hennessey berated the defendant on numerous occasions and worked together to falsely charge Balsamo, resulting in his suspension. These acts are not only "threats" or "annoyances," as the defendants carried out their intimidating

6

words by causing the suspension.  Additionally, the court concludes that the allegations of the complaint could lead a reasonable jury to conclude that the actions of the moving defendants caused more than "hurt feelings."

The persistent actions of the defendants, as alleged in Complaint, could support Balsamo's intentional infliction of emotional distress claims.  To grant the Motion to Dismiss here, the court would have to say there are no further facts and evidence that could arise which would have a reasonable person exclaim that this conduct was "outrageous!"  The court is not willing to reach this conclusion before discovery of the facts and development of the record.  Therefore, the Motion to Dismiss the intentional infliction of emotional distress claims is denied.

### B.  Substantive Due Process

Balsamo also asserts a claim that his substantive due process rights were violated by the moving defendants when, after criticizing him, these defendants brought about his suspension.

There are various ways to allege a substantive due process claim, but Balsamo appears to assert only one in his Complaint.  Balsamo claims that the defendants' actions could reasonably be characterized as "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  County of Sacramento v. Lewis, 523 U.S. 833, 848 n.8 (1998).  Under this theory of substantive due process, the court's authority to second-guess an academic institutions actions under substantive due process is extremely limited.  Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 225 (1985) ("Considerations of profound importance counsel restrained judicial review of the substance of academic decisions.").  Indeed, the court may not override the actions of

an academic body under substantive due process rights unless the action was such a substantial departure from accepted norms as to demonstrate that the person or committee responsible "did not actually exercise professional judgment." Id.

This "shocks the conscience" test is "necessarily imprecise." O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005). However, whether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken. See County of Sacramento v. Lewis, 523 U.S. 833 (1998). The primary issue when considering this test is the state of mind of the defendants. See O'Connor, 426 F.2d 187.

The moving defendants principally rest their argument for dismissal of the substantive due process claim is that the conduct of the defendants does not "shock the conscience." In order to grant the motion to dismiss for the defendants on the basis that there was no conscience shocking behavior, the court would have to find definitively that they acted without culpable intent toward Balsamo. The court cannot do so at this stage. The allegations support reasonable inferences that cast doubt on the defendants' motives and, therefore, the Motion to Dismiss is denied.

Finkle and Hennessey have also moved to dismiss Balsamo's substantive due process claim on the ground that Balsamo has failed to establish a fundamental property right to his public employment. Thus, the court must first identify the nature of the right that Balsamo claims the defendants violated. See Washington v. Glucksberg, 521 U.S. 702, 721 (1997)("[W]e have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest"). After determining what right has been violated, the next inquiry is whether this is a fundamental right, in that it

8

is "deeply rooted in this Nation's history and tradition." Glucksberg, 521 U.S. at 721 (citing Moore v. East Cleveland, 431 U.S. 494 (1977)) (quotations omitted). The Supreme Court instructs that, when answering this question, courts must be "reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended." Collins v. Harker Heights, 503 U.S. 115, 125 (1992).

Judging by his allegations, Balsamo appears to claim that he has a fundamental right in his public employment without suspension. While it is possible that on a fuller record, this court would conclude, as a matter of law, that Balsamo does not have a fundamental right to a tenured public school position, the court cannot reach this conclusion on the Motion To Dismiss. Consequently, the court denies the Motion To Dismiss the substantive due process claim.

The court denies this partial Motion to Dismiss in order to allow Balsamo to develop a fuller record concerning the existence of a fundamental right in his employment. For instance, Balsamo may be able to show that the policies of the Board of Education and its members have created an entitlement and thus a fundamental right in his employment.[1] At this point in the case, it is not beyond doubt that Balsamo could prove no set of facts in support of his claim that would entitle him to relief.

---

[1]Second Circuit precedent instructs that a plaintiff alleging that a state official has deprived him of a property interest in violation of substantive due process can only prevail if he can demonstrate a "clear entitlement" to the interest asserted under state law. Natale v. Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999) (citing Walz v. Smithtown, 46 F.3d 162, 167-68 (2d Cir. 1995). A clear entitlement may arise where a policymaker's discretion is "so narrowly circumscribed as to virtually assure conferral of the benefit" in question. RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 918 (2d Cir. 1989).

## V.    CONCLUSION

For the foregoing reasons, the defendants' Partial Motion to Dismiss (Doc. No. 35) is denied.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 3rd day of May, 2007.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge