UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|   |   |   |
|---|---|---|
| FRED P. BALSAMO, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 3:06-cv-1325 (JCH) |
|   | : | |
| CATHY FINKLE, et al., | : | |
| Defendants, | : | August 4, 2008 |

**RULING RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Doc. Nos 72, 74, 77 & 80)**

## I. INTRODUCTION

Plaintiff, Fred Balsamo, brings this action alleging that defendants, John Finkle, Thomas Hennessey, and the East Haven Board of Education, deprived him of both procedural and substantive due process of law in violation of the Fourteenth Amendment of the United States Constitution, as enforced through section 1983 of Title 42 of the United States Code. Balsamo also alleges Connecticut state law claims of intentional infliction of emotional distress against defendants Finkle and Hennessey. Balsamo had also alleged state law claims against Finkle's wife, Cathy. However, those claims against Mrs. Finkle have been dismissed by stipulation.[1]

Pursuant to Federal Rule of Civil Procedure 56, each of the defendants filed Motions for Summary Judgment which collectively encompass all the remaining counts in the Complaint against all defendants.[2] (Doc. Nos. 74, 77 and 80).

---

[1] Accordingly, the court terminates as moot Cathy Finkle's Motion for Summary Judgment (Doc. No. 72) and her Motion to Strike (Doc. No. 97).

[2] Balsamo filed a Motion To Strike John Finkle's Second Motion for Summary Judgment (Doc. No. 95) on the basis that Finkle filed two separate Motions for Summary Judgment. Both Motions were filed on the same day. The first was filed with the court on October 17, 2007, by Attorney Catherine Neitzel and moves for summary judgment on the Third Count of the Complaint (Doc. No. 74). The second was filed on the same day by Attorneys Hugh Keefe and Nancy Fitzpatrick Meyers (Doc. No. 77). Finkle is joined by Hennessey in this latter Motion, which requests that the court grant summary judgment on all counts

## II.　FACTS[3]

Balsamo became the Athletic Director for the East Haven Public Schools in 1996. At all times relevant to this case, Balsamo was a fully tenured employee of the East Haven School Board and a member of the Administrators' union. Finkle and Hennessey are members of the Board of Education (the "Board"), of which Finkle is the Chairman.

### A.　Balsamo's Interactions with Defendants

Balsamo claims that various interactions he had with defendants Finkle and Hennessey, in his position as Athletic Director, ultimately led to his ten-day suspension without pay.

*1.　John Finkle*

Beginning in October 2004, Balsamo alleges that Finkle engaged in conduct that ultimately led to his ten-day suspension and his emotional distress. At that time, Balsamo claims that Finkle called and berated him because the girls volleyball coach was not giving his friends' daughter enough playing time. See Pl's. Stat. of Material Facts in Resp. to John Finkle's Mot. for Summ. J. (Doc. No. 88) (hereinafter "Pl.'s 56 Stat./J. Finkle") at ¶ 1. He further alleges that Finkle stated that he intended to support Hennessey's vendetta against him. Id.

In April of the following year, Finkle wrote a letter to Balsamo regarding a

---

related to either John Finkle or Hennessey. Balsamo moves the court to strike John Finkle's Motion for Summary Judgment. (Doc. No. 74). Attorney Nietzel represents Finkle in his individual capacity whereas Keefe and Meyers represent Finkle and Hennessey in their official capacities as members of the Board of Education. Thus, the court finds that, while filing two motions may have been excessive, it was not out of the bounds of their representation. The court therefore denies Balsamo's Motion to Strike.

[3]Pursuant to the rules regarding summary judgment, the undisputed facts are taken as true, while the facts still in dispute are taken in the light most favorable to the plaintiff.

complaint he had against the baseball coach. Defs. J. Finkle and Hennessey's Ex.16. In this letter, Finkle claims that the coach spoke to his wife in an unprofessional and intimidating manner. Id. He further stated in the letter that he felt the coach did not like his son, Jonathan, and requested that Balsamo address the situation immediately. Id.

In June 2005, Finkle wrote Balsamo another letter expressing his disappointment with Balsamo and his staff. Id. at Ex. 17. The letter was a reaction to an incident that occurred at the high school. Balsamo received a complaint from a physically disabled student stating that a group of boys, including Finkle's son, had ridiculed him. Balsamo alleges that, after corroborating the story, he prepared a report but did not take disciplinary action. Balsamo then wrote a letter to Mrs. Finkle explaining why the report included her son's name, despite the fact that his name was retracted by the complainant.[4] Subsequently, John Finkle responded to Balsamo in a June letter, stating, among other things, "I could not be any more furious over your consistent arrogant attitude that you carry when dealing with situations such as this." Id.

2. *Thomas Hennessey*

The basis of the claims against Hennessey relates back to a time before he was a member of the Board. In the spring of 2003, Hennessey and his son stated that another student assaulted the son during a basketball tournament at the high school. Following

---

[4]There is disagreement among the parties regarding whether or not the complainant and his mother retracted the name of Finkles' son. Balsamo argues that the parents of the disabled student retracted his name because they were made to fear for their safety as a result of the Finkles intimidating them. Pl.'s L. Rule 56 Stat. in Opp. to J. Finkle and Hennessey's Mot. for Summ. J. (Doc. No. 96) (hereinafter "Pl.'s 56 Stat./J. Finkle and Hennessey") at ¶ 58. The Finkles, on the other hand, assert that their son's name was retracted because he was not a part of the incident.
  The letter from Balsamo to Cathy Finkle states that the complainant and his mother told him that they "may have been mistaken" about the Finkles' son's involvement.

the incident, Hennessey called Balsamo, and the two disagreed about how the incident should have been handled. Balsamo alleges that, during this conversation, Hennessey gave him an ultimatum that, if Balsamo did not do something about it, Hennessey was going to call the police or go to a higher authority. See Balsamo Dep. at 371. There was also disagreement about the way that Hennessey's son spoke to Balsamo.

In November 2003, Hennessey became a member of the Board. Balsamo alleges that Hennessey sought and obtained his post on the Board in order to "get Fred." Pl.'s 56 Stat./J. Finkle and Hennessy at ¶ 17.

All of the incidents described are alleged to be reasons for why Balsamo was ultimately suspended and why he experienced emotional distress. He asserts that the defendants harbored a vendetta against him because of these negative interactions and were "out to get him."

B. Ten-Day Suspension

On October 27, 2005, an employee of the school district, Leslie DeMarco, made a sexual harassment claim against Balsamo. That same day, the Assistant Superintendent, Anthony Serio, met with Balsamo and informed him of DeMarco's complaint. Shortly thereafter Balsamo contacted his union attorney, Kevin Deneen, who advised him not to contact anyone regarding the matter. Balsamo Dep. at. 434-436. On the same day, administrators from East Haven High School interviewed DeMarco regarding her complaint, and it was decided that an independent investigation of the

sexual harassment complaint would be conducted by Attorney Lorraine Cortese-Costa.[5]

On November 1, 2005, Cortese-Costa began her investigation with interviews of the two school administrators involved in handling the complaint and of two possible witnesses to the alleged harassment. On or about the same day, Balsamo retained additional legal counsel, Reece Norris, to assist with his defense. Attorney Norris suggested Balsamo not speak to anyone until they discovered the nature of the claim. Balsamo Dep. at 442-443. On November 2, 2005, Cortese-Costa provided Balsamo's counsel with details regarding the sexual harassment complaint. In response to this, Balsamo's attorney wrote Cortese-Costa a letter indicating that various witnesses would corroborate Balsamo's claim that DeMarco's allegations were false. Defs. Finkle and Hennessey's Ex. 6. Cortese-Costa subsequently interviewed all three witnesses identified in Norris's letter. On November 3, 2005, Cortese-Costa interviewed DeMarco regarding her complaint. On November 9, 2005, Balsamo was interviewed for approximately two hours. Attorney Norris was present during this interview. The following day, Cortese-Costa sent a letter to the Superintendent, Martin DeFelice, indicating that she had concluded her investigation and found no reason to believe that Balsamo had engaged in sexual harassment against DeMarco.

On November 18, 2005, Cortese-Costa issued a twenty-three page report in which she reiterated her conclusion that Balsamo did not engage in sexual harassment. In her report, however, she recounted a number of alleged incidents as reported to her

---

[5]Balsamo agrees that it was proper to conduct this investigation. Balsamo Dep. at 57-58. However, Balsamo has raised an issue regarding the policies followed by the Board. He claims that the Board followed a newer policy that had not yet been voted on. However, Balsamo does not provide the court with copies of either the new or old policy. Thus, Balsamo fails to raise an issue of material fact as to which policy the Board followed in conducting its investigation.

by DeMarco, Balsamo, and other individuals. After receiving the report, Balsamo contacted one of the people whom he believed the report was referring to when it discussed certain prior incidents in which Balsamo had been involved. Balsamo Dep. at 60. The woman he contacted declined to talk to him about the incident. Id. at 64. Subsequently, Balsamo was told by Superintendent DeFelice not to contact any of the people referenced in the report.

On or about November 22, 2005, after the report was issued, DeMarco alerted DeFelice of her intention to file an appeal. On December 7, 2005, DeFelice wrote a letter to DeMarco's counsel indicating that he considered the appeal and found that he had no reason to overturn the conclusions made by Cortese-Costa. DeMarco then filed an appeal of DeFelice's conclusions with the Board. On December 27, 2005, a hearing was held before the Board to consider the appeal, during which counsel for the plaintiff and counsel for DeMarco were permitted to make presentations on behalf of their clients. After hearing presentations from both the parties, the Board denied the appeal and accepted the Investigative Report on January 30, 2006. At that time, the Board also made the following motion:

> Resolved, that the appeal be denied. The Board accepts the investigator's report. However, the Board reserves the right to reopen this matter in the event that any pending investigation or any other reliable proof from any other source provides cause for said matter to be further investigated. Further, based upon the Board's review of the Investigative Report, the Board directs the Superintendent to determine whether any conduct referenced therein is actionable or subject to discipline as inappropriate or unprofessional conduct or otherwise, and if he so finds to take appropriate action or discipline.

Defs. Finkle and Hennessey's Ex. 11 at 8.

On February 6, 2006, Arthur Martorella, Education Consultant to the

Superintendent, sent a memo to Balsamo informing him of an investigative meeting that was being held the following day to provide Balsamo with an opportunity to explain the incidents referred to in the Cortese-Costa's report.[6]  Balsamo was unable to meet the next day due to a back injury; they met on March 6, 2006, instead.  Balsamo's counsel was present during the meeting.  On March 7, 2006, Balsamo received written notice of a ten-day suspension for "inappropriate and unprofessional conduct in several instances and [Balsamo's] actions in contacting a female employee who was identified by the Investigator during [his] interview."  Def. Board's Ex. D.

Balsamo subsequently grieved the investigation and the ten-day suspension by the Superintendent's Office pursuant to his collective bargaining agreement.  He requested a Step 1 hearing.  Balsamo later waived the Step 1 hearing and requested a Step 2 hearing before the Board.  As part of the grievance, Balsamo asserted that the suspension was pre-determined.  The Board granted Balsamo's request to have a Step 2 hearing and sent Attorney Deneen a letter on April 3, 2006, stating that they would hold the hearing on April 11 at the regularly scheduled Board of Education Meeting.  The letter further stated that the matter would be heard in Executive Session unless Balsamo wanted it to be public.  Defs. Finkle and Hennessey's Mot. for Summ. J., Ex. 22.  Both

---

[6]The incidents were stated in a memo from Martorella to Balsamo as follows: he wanted the Hall Monitor to go out for a drink with him; he engaged in a conversation with a subordinate about a naughty girl party involving dildos; he advised this Security Guard that another guard looked good in jeans; he told the Security Guard that having people fired was not a problem; he showed an inordinate interest in a Security Guard by offering her rides, offering her a coat, and walking her to the door; he allowed a situation to occur when he allowed a Security Guard to come around behind his desk when he understood that she might be husband shopping and that he hugged her alone in his office.  See Def. Board's Ex. C. It is clear from the Rule 56(a)(1) statements that the "Security Guard" referred to is DeMarco.  The memo further stated that they would also discuss the fact that Balsamo telephoned an employee mentioned in the Investigative Report and the allegation that he berated or criticized her for her involvement in the investigation.  See id.

the Administration and Balsamo had the opportunity to present facts and arguments in support of their positions at the Step 2 hearing. Ultimately, the Board denied the grievance appeal by a vote of six to one. Finkle and Hennessey voted to deny the appeal. Balsamo proceeded to arbitration on the matter. The grievance was ultimately resolved in the third week of June, and the suspension was reduced to a written warning. The Board also agreed to reimburse Balsamo for the days lost as well as $4,747.50 for attorneys fees in connection with the investigation of the sexual harassment charge. See id. at Ex. 15. Balsamo retired at the end of the 2007 school year.

### C. Public Release of Information

Several articles appeared in the *New Haven Register* regarding the sexual harassment claim. Balsamo did not read the articles. He asserts that the "Board of Education orchestrated the public release of substantial portions of the admittedly false accusations against the plaintiff in connection with its imposition upon him of the suspension described" and violated his right to due process as a result. Compl. ¶ 26, Fifth Count.

## III. DISCUSSION

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there

is a genuine issue for trial," Anderson, 477 U.S. at 255, and present evidence that would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

Generally, when assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

### A. Procedural Due Process

Defendants Finkle, Hennessey, and the Board argue that summary judgment should be granted on the procedural due process claims alleged by Balsamo because Balsamo does not have a valid property interest and because he was given all the process that he was due. Balsamo claims that he was deprived of property with respect to his job and the money he lost as a result of his suspension.

Identifying the property interest involved is the first step when considering a due process claim. O'Connor v. Pierson, 426 F.3d 187, 196 (2d. Cir. 2005). "It is well established that the state-law property interest of government employees who may only be discharged for cause, such as tenured teachers, is a constitutionally protected property interest for the purposes of the Fourteenth Amendment." Id. Although the Supreme Court has not yet decided whether "procedural due process protection extends

to employee discipline short of termination," the Second Circuit has recognized protection with respect to a tenured state employee's suspension without pay. Id; see also Narumanchi v. Bd. of Trustees of the Ct. State Univ., 850 F.2d 70, 72 (2d Cir. 1988). Thus, because Balsamo was suspended without pay for ten days, he has a valid property interest at stake.

The second step in analyzing a procedural due process claim is to determine whether the Board provided Balsamo the process he was due. O'Connor, 426 F.3d at 197. Procedural adequacy turns on the pre- and post-deprivation procedures available, which courts often analyze separately. Id. Balamo has indicated that he is only contesting the pre-deprivation procedures in his case. See Pl.'s Mem. in Opp. to Board's Mot. For Summ. J. at 6 (stating "the plaintiff, however, is not challenging his post-deprivation procedures.")

With respect to pre-deprivation procedures, the Constitution requires that, at a minimum, the plaintiff be provided with notice and opportunity to be heard. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). "Pre-deprivation process 'need not be elaborate;" its primary function is to serve as an 'initial check against mistaken decisions." O'Connor, 426 F.3d at 198 (citing Loudermill, 470 U.S. at 545-46). Furthermore, the existence of post-deprivation procedures inform the necessary scope of the pre-deprivation procedures. Loudermill, 470 U.S. at 547 n.12.

Balsamo appears to be claiming that he was deprived of pre-deprivation due process because the process was "fundamentally biased at the outset." See Pl.'s Mem. in Opp to Board's Mot. for Summ. J. at 8. He also indicates that his hearing in front of the Board was a pretense because the Board had evidence by way of a polygraph and

-10-

Cortese-Costa's investigative report that he did not sexually harass DeMarco, yet it still ordered further investigation to be done. Essentially, Balsamo claims that the Board, Hennessey, and Finkle pursued claims they knew to be false in order to "bring him down." See Pl.'s Mem. in Opp. to Hennessey and Finkle's Mot. for Summ. J. at 10.

Balsamo was provided with adequate pre-deprivation notice and opportunity to be heard with regard to his suspension. Balsamo had been fully informed of the sexual harassment allegations against him and he was provided with a copy of the report which cleared him of DeMarco's allegations. In that report, however, were allegations of his conduct, much of which he acknowledged to the investigator, Attorney Cortese-Costa. He was privy to many of the incidents giving rise to the investigation that led to the suspension because he was questioned about them during his interview with Cortese-Costa. Once the Board denied DeMarco's final appeal and requested that the Superintendent conduct further investigation, he was informed by Martorella that there would be an investigative meeting to provide him with an opportunity to be heard. He was also told in the memorandum that the investigation could result in discipline. The memorandum further detailed specific incidences that would be discussed and investigated. In all, for each step in the pre-deprivation process, Balsamo was informed of what was happening and why.

Balsamo was provided an opportunity to be heard prior to the ten-day suspension. Once the Board accepted Cortese-Costa's report and initiated further investigation with respect to certain incidences outlined in her report, Balsamo was provided an opportunity to be heard during an investigative meeting with Martorella. His counsel was present during this meeting. This specific notice of the charged conduct

and the possible consequences, as well as the opportunity to be heard, is clearly sufficient to satisfy due process in the pre-suspension phase.

To the extent Balsamo's due process claim rests on his theory that the charge against him was motivated by the defendants' desire to "get him," it must fail. First, the Board's vote on December 27, 2005, was six to two. Even without the votes of Finkle or Hennessey, the referral for further proceedings would have occurred. Balsamo has come forward with no evidence from which a jury could find that Finkle or Hennessey wrongly influenced at least two other Board Members on that vote. Further, the pre-suspension process of notice and opportunity was provided by the Superintendent, through his Educational Consultant, Mr. Martorella. Balsamo has come forward with no evidence from which a jury could conclude that Mr. Martorella was acting as part of Finkle or Hennessey's effort to "get" Balsamo.

Because Balsamo was provided with sufficient notice and opportunity to be heard, his procedural due process claims against the Board, Hennessey, and Finkle fail because there are no genuine issues of material fact in dispute. Thus, Hennessey, Finkle, and the Board are entitled to summary judgment as a matter of law with respect to the due process claims against them.

B.  Substantive Due Process

Balsamo also claims that the Board, Hennessey, and Finkle deprived him of substantive due process by engaging in conduct that was conscience shocking and outrageously arbitrary. The basis for his assertion is that, despite the fact that he was found not guilty of sexual harassment, the Board, Finkle, and Hennessey pursued further investigation that ultimately led to his suspension. According to Balsamo, they

-12-

pursued this line of investigation simply because they did not like him. Further, he claims that certain board members, namely Hennessey and Finkle, should have recused themselves from the decisions regarding his conduct because they had a grudge against him. Finally, he asserts that the Board publicized these incidents in the local newspaper, which action is so egregious that it shocks the conscience.

   *1.     John Finkle and Hennessey*

"The touchstone of due process is the protection of the individual against arbitrary action of government." County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998) (citing Wolff v. McDonnell, 418 U.S. 539, 558 (1974)). With respect to claims regarding abusive executive action, the Due Process Clause is violated "only when it can properly be characterized as arbitrary, conscience shocking, in a constitutional sense." Id. at 847 (citing Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992)). The clause is intended to prevent the government from abusing its power or using it as an instrument of oppression. Id. However, the Due Process Clause "is not a guarantee against incorrect or ill-advised personnel decisions." Bishop v. Wood, 426 U.S. 341 350 (1976). Nor does it guarantee municipal employees a workplace that is free of unreasonable risks of harm. Collins, 503 U.S. at 129. Only the most egregious conduct violates substantive due process. See, e.g., Lewis, 523 U.S. at 846. Likewise, the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." Id. at 848. See also Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168,173 (2d Cir. 2002).

   Finally, whether executive action shocks the conscience depends primarily on the

state of mind of the defendants. O'Connor, 426 F.2d at 187. However, that does not mean that every substantive due process claim asserting conscience shocking behavior survives summary judgment. See, e.g., Smith, 298 F.3d at 172-173 (substantive due process claim did not survive summary judgment, despite the fact that a teacher intentionally slapped a student across the face, for while "striking a student without any pedagogical or disciplinary justification. . . is undeniably wrong. . . not all wrongs perpetrated by a government action violate due process.")

Balsamo has failed to demonstrate that John Finkle and Hennessey engaged in conduct that was so egregious as to shock the conscience. Balsamo's evidence amounts to testimony that Hennessey and John Finkle "berated" and "harassed him" over the phone and in letters. He has not provided evidence that corroborates his theory that they were "out to get him." As the Supreme Court stated in Bishop v. Wood:

> In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of any employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways . . . the Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

426 U.S. 341, 350 (1976). Thus, while it is true that the defendants accepted Cortese-Costa's investigative report as true, Balsamo has not come forward with evidence to support his claims that further investigation was unjustified or that his suspension was the result of some sort of vendetta against him. Cortese-Costa's report cleared Balsamo of DeMarco's specific claim of sexual harassment. However, in the course of that investigation, certain conduct of Balsamo came to light that was questionably inappropriate, including Balsamo engaging in a conversation about a "naughty girl party"

and frequently complimenting a security guard on her appearance.

Taking Balsamo's allegations as true for the purpose of these Summary Judgment Motions, Hennessey and Finkle were out to get him in some way. His claims would still not rise the level of conscience shocking. There were checks and balances in the process that led to his suspension. While the Board recommended that the Superintendent conduct further investigation into specific instances mentioned in the Investigative Report, it was ultimately Martorella that issued his suspension, not the Board. Moreover, Balsamo admits to some of the incidents that gave rise to the suspension.[7] See Defs. Finkle and Hennessey's Ex. 4 at 18-23.

Conscience shocking behavior depends on the circumstances of each case. Lewis, 523 U.S. at 850. Here, Balsamo is the Athletic Director at a high school, and he handles complaints from parents and Board members alike on a regular basis. While the parents involved in this case may have been more aggressive than most, construing the conduct of John Finkle and Hennessey in the light most favorable to Balsamo and drawing all reasonable inferences in his favor, their behavior does not rise to the constitutional level of arbitrary or conscience shocking. Id. at 846 (stating "we have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.")

*2. The Board of Education*

Having addressed Balsamo's due process claims against John Finkle and

---

[7] For example, in his interview with Cortese-Costa, Balsamo admitted to complimenting DeMarco on her appearance and was part of a discussion with DeMarco regarding a "naughty girl party." See Balsamo Dep. at 73-76.

Hennessey, the court now turns to Balsamo's claims against the Board. As with Finkle and Hennessey, Balsamo claims that the Board engaged in conscience shocking behavior and thus deprived him of substantive due process. Most of the allegations with respect to the Board arise out of conduct by Finkle and Hennessey as members of the Board. The court has already addressed those claims above and granted summary judgment. However, Balsamo rests his claim against the Board on some additional conduct regarding the Board as a whole. For instance, Balsamo argues that certain Board members should have abstained from voting on the sexual harassment matter because of their grudge against him. One person he cites in this regard is Marilyn Vitale, who Balsamo claims was a good friend of DeMarco's mother and should have therefore recused herself. Balsamo provides no evidence that her vote was swayed by this relationship.[8] Similarly, Balsamo claims that board member, Nancy Perez, should have recused herself from voting on whether or not there should be further investigation because she was a witness against him in the sexual harassment complaint.[9] Again, Balsamo fails to provide any evidence that Perez's actions were conscience-shocking and thus his claims fail as a matter of law.

Finally, Balsamo asserts that news of his suspension and events leading up to it were reported in the *New Haven Register*. However, he has not come forward with any evidence on which a jury could rest a finding that the defendants are the ones that leaked the story. His allegations are based on mere speculation, which is not enough to

---

[8] It bears noting that her vote was opposite to that of Hennessey and Finkle in that she voted against any further investigation. See Defs. Finkle and Hennessey's Ex. 11 at 8.

[9] It also bears noting Perez voted to deny DeMarco's appeal.

survive summary judgment. Hogan v. Conn. Judicial Branch, 220 F. Supp. 2d 111, 122 (D. Conn. 2002) (stating "a claim supported only by the plaintiff's bald assertions . . . cannot withstand summary judgment.") Thus, this behavior cannot be attributed to the defendants because Balsamo has failed to create a material issue of fact to sustain a motion for summary judgment. Consequently, his claim of substantive due process against the Board fails as a matter of law.

    C.    State Law Claims

Having dismissed all the federal claims brought by Balsamo, the only remaining claims are Connecticut state law claims against Finkle and Hennessey. Jurisdiction over these claims exists solely by virtue of 28 U.S.C. § 1367. However, when all federal claims have been dismissed prior to trial, it is appropriate for the district court to leave the state law claims to the state courts. Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001). Indeed, it is more than appropriate: "[i]n general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998). Accordingly, the state law claims are dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment of Finkle and Hennessey (Doc. No. 77) is GRANTED as to the federal claims. Likewise, the Board's Motion for Summary Judgment (Doc. No. 80) is GRANTED. The court DENIES Balsamo's Motion to Strike (Doc. No. 95). The outstanding state law claims against the remaining individual defendants are DISMISSED without prejudice to refiling in state court. The remaining Motions for Summary Judgment (Doc. Nos. 72, 74 and 77 in part)

are DENIED as moot. Likewise, Cathy Finkle's Motion to Strike (Doc. No. 97) is also DENIED as moot.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 4th day of August, 2008.

      /s/ Janet C. Hall
Janet C. Hall
United States District Judge